LANIER, Judge.
This is an appeal from a decision of the State Civil Service Commission (Commission) by a classified employee which seeks the removal of another classified employee from a position to which she was promoted on the ground that the first employee was improperly excluded from the promotion process, in violation of the Commission’s rules. The Commission denied relief on the ground that neither the appointing agency nor the other employee were charged with “any wrongdoing.” This appeal followed.
FACTS
The facts are set forth in the Commission’s opinion as follows:
“1. On January 16, 1984, DHHR [Department of Health & Human Resources] sent to DCS [Department of Civil Service] a form (SF-2) requesting a promotional certificate to fill a vacant Laboratory Technologist IV position at Huey P. Long Memorial Hospital. The SF-2 requested that the promotional certificate be restricted to persons currently employed by the Office of Hospitals of DHHR and requested selective certification as follows: ‘Must be ASCP certified or equivalent or eligible for certification.’
“2. At this time, DCS was routinely honoring requests for selective certification for laboratory technicians who were certified by the American Society of Clinical Pathologists, (hereafter, ASCP). Therefore, this request was processed without question.
“3. When the promotional certificate was typed at DCS it contained the following notation: ‘SELECTIVE CERTIFICATION: MUST BE REGISTERED OR ELIGIBLE TO REGISTER WITH ASCP,’ which was the language routinely used for this type of selective certification. The words ‘or equivalent,’ as requested by DHHR, were disregarded.
“4. The registers of names were searched for persons who were employees of the Office of Hospitals and who were ASCP registered and on February 22,1984, promotional certificate # 1352 was issued by DCS. It contained the name of one employee, Susan E. Davenport.
“5. Ms. Davenport was promoted to the vacant Laboratory Technologist IV position effective February 29, 1984, and has been serving in this position ever since. Ms. Davenport’s qualifications have been challenged by no one.
“6. On January 30, 1984, appellant had submitted his application for the position of Laboratory Technologist IV to DCS. On his application, appellant indicated that he had about 1 year and 9 months experience as a Laboratory Technologist III; 4 years and 4 months experience as a Laboratory Technologist II; 4 years and 9 months experience as a Laboratory Technologist I; 2 years and 7 months experience as a Laboratory Assistant III; almost 1 year of experience as a Cardiology Technologist I; 1 year of experience as a Laboratory Assistant II; and 1 year and 3 months experience as a Laboratory Assistant I. Appellant also indicated that he had received a high school diploma, had received no additional formal education and had been a Registered Medical Technologist with the American Medical Technologist (hereafter, AMT) since 1971 and a Certified Lab Supervisor with the American Board of Bioanaly-sis since 1983.
“7. The pertinent portions of the minimum qualifications for the class of Laboratory Technologist IV are:
*715 'MINIMUM QUALIFICATION REQUIREMENTS
Options will be established as follows: ‘Medical’ or ‘Public Health’.
MEDICAL: Certification as a Medical Technologist by the Board of Registry with the American Society of Clinical Pathologists or as a Clinical Laboratory Scientist with the National Certification Agency for Medical Laboratory Personnel plus 3 years of professional level experience as a medical technologist, one year of which must have been above the beginning level.
SUBSTITUTIONS: Graduate training in any of the fields listed in Item 2 below may be substituted for the required general experience on the basis of 30 semester. hours for one year of experience. Any of the Following may be Substituted for Certification:
1. Satisfactory completion of work in a program of medical technology accredited by the committee on Allied Health, Education, and Accreditation of the American Medical Association.
2. A baccalaureate degree with not less than 24 semester hours in bacteriology, zoology, chemistry, histopathol-ogy, histologic technic, medical technology, immunology, virology, parasitology, mycology, microbiology or any combination of these courses.
3. Four years of progressively responsible medical laboratory work, two years of which must have been at least equivalent to Laboratory Technical Assistant III plus 18 hours in the above listed coursework may be substituted for the required college graduation.’
[[Image here]]
“8. Appellant clearly met the experience requirement for the position of Laboratory Technologist IV but was not ASCP registered, nor was he certified as a Clinical Laboratory Scientist with the National Certification Agency (hereafter, NCA) for Medical Laboratory Personnel. Therefore, appellant did not meet the certification requirements specified in the minimum qualifications and on paper, appellant did not possess any of the qualifications which would have substituted for the required certification. Appellant had the experience listed in paragraph 3 of the qualifications required for certification substitutions, but lacked the 18 semester hours in the designated coursework.
“9. On April 13, 1982, appellant had been title changed from a Medical Laboratory Technologist III to a Laboratory Technologist III. When the title of the class was changed, the minimum qualifications for the class also changed. The former qualifications required ASCP registry plus 2 years of professional level experience as a medical laboratory technologist; however, 4 years of experience could be used to substitute for the registry requirement. The new qualifications required certification by ASCP or NCA plus 2 years of professional level experience as a medical technologist; however, 4 years of experience PLUS 18 college semester hours in designated coursework were required to substitute for the certification requirement. Appellant had the experience required to substitute for certification, but lacked the newly-required 18 semester hours. Thus, when appellant was title changed to Laboratory Technologist III, he did not meet the new minimum qualifications for his position. However, he was allowed to remain in his position under the provisions of Civil Service Rule 5.7, which, at the time, read as follows:
“5.7 Status of Incumbent when Position is Affected by Title Change.
When a position is affected by a title change, the incumbent shall be entitled to serve therein without change in status.
“10. On January 10, 1984, Civil Service Rule 5.7 was amended to read as follows:
“5.7 Status of Incumbents when Position is Affected by Title Change.
(a) When a position is affected by a title change, the incumbent shall be entitled to service therein without change in status.
(b) Whenever class titles are changed and incumbents of positions in affected classes do not meet the new re *716 quirements, such incumbents will be allowed to remain in the position occupied and to continue gaining qualifying experience for the higher levels that are in the normal career progression for that class.
(c) When incumbents referred to in (b) above acquire the difference (in experience) between the minimum qualification requirements of their present class and those of higher levels that are in the normal career progression for that class, they will then have met the qualification requirements for the higher levels(s). However, incumbents herein referred to may not be eligible for advancement to the higher levels if there are legitimate barriers, such as licensure, certification, accreditation, restrictive funding requirements, etc., which exceed the credentials possessed by the incumbents.
“11. DCS interpreted this amendment to mean that so long as appellant had acquired the necessary experience to qualify for the higher level position, the fact that he had not acquired the additional educational requirements imposed when the minimum qualifications were changed in 1982 would not prevent his promotion because promotion from Laboratory Technologist III to Laboratory Technologist IV is considered a normal career progression for the class of Laboratory Technologist III. Based on the information then available, DCS was aware of no legitimate barriers to appellant’s promotion to Laboratory Technologist IV.
“12. By virtue of the newly adopted ‘grandfather’ rule, appellant was deemed to qualify for the Laboratory Technologist IV position notwithstanding the fact that he did not have the 18 semester hours of coursework required to substitute for certification. However, appellant was deemed not to meet the selective certification requested by DHHR. For this reason, appellant’s name did not appear on the promotional certificate.
“13. In late February 1984, appellant learned that his name had not been on the promotional certificate.
“14. Around May 1984, questions arose as to whether appellant’s name should have been on the certificate and whether selective certification had been justified. DCS was aware that in order to receive federal funds, the DHHR facilities had to be accredited by the Joint Commission on the Accreditation for Hospitals (hereafter, JCAH). Appellant had argued that his certification by AMT was equivalent to registry with ASCP, so DCS attempted to find out if the two registries were equivalent for JCAH purposes. At this time, DCS was aware of only two registries for Laboratory Technologists, the two mentioned in the class specifications — ASCP and NCA.
“15. DCS then procured a copy of the report of JCAH to determine whether JCAH considered AMT certification equivalent to ASCP certification. JCAH required a sufficient number of qualified laboratory personnel and defined ‘qualified personnel’ as ‘a graduate of a medical technology program approved by a nationally recognized body or have documented equivalent education, training and/or experience.’
“16. A technician at DCS called DHHR to get clarification on what the JCAH requirements meant, to no avail; the technician called JCAH for clarification without success; the technician then called the National Commission on Health Certifying Agencies and learned that there were four nationally recognized registries: ASCP, NCA, AMT and the International Society of Clinical Laboratory Technologists. Apparently, the National Commission declined to rank these registries and would not say if one was better than another. Based on this information and the inability to get any clear guidance on what JCAH required, DCS decided that they should no longer permit selective certification for ASCP registry and advised DHHR of this decision.
“17. Had selective certification not been requested, appellant’s name would have appeared on the certificate.” [Footnote omitted.]
*717 In its conclusion, the Commission stated, in pertinent part, as follows:
The testimony at the hearing indicates that the issue of selective certification is indeed the pivotal issue in this appeal. Were it is [sic] not for the selective certification, appellant’s name would have appeared on the certificate. In order to receive federal funds, Huey P. Long Memorial Hospital must be accredited by JCAH. If DHHR had asked for selective certification of personnel who met the JCAH criteria, such a request would certainly have been justified. However, there was insufficient evidence offered in this case to enable the Commission to determine whether the selective certification actually requested was justified. Although apparently satisfaction of JCAH criteria was the reason for the request for selective certification, JCAH criteria were not offered into evidence. Although appellant contended that certification by AMT was equivalent to registry by ASCP, and DCS apparently conceded that it could not refute this contention, neither the AMT requirements nor the ASCP requirements were offered into evidence. For these reasons, it is impossible for the Commission to conclude whether DCS erred in initially honoring the selective certification request or erred in disregarding a portion of the request for selective certification or erred in deciding that it should not have honored the request.
However, the Commission ultimately decided that it did not have to address the issue of whether DCS violated any Civil Service Rules because it concluded that, since neither DHHR nor Davenport were charged with any wrongdoing, the Commission was powerless to rescind the promotion.[1]
RESCISSION OF PROMOTION (REMOVAL)

(Assignments of Error 4, 5 & 6)

Appellant contends the Commission erred in holding that it was powerless to order that the promotion of Davenport be vacated because neither DHHR nor Davenport were charged with “any wrongdoing.” Both appellees contend the Commission was correct in its ruling, and rely, as did the Commission, on Donchess v. DHHR, *718 Office Of Management And Finance, 457 So.2d 833 (La.App. 1st Cir.1984). Such reliance is misplaced. Donchess does not address this issue; rather, we held in Don-chess that, where the Commission proceeds to rescind the promotion of an employee, that employee must have been made a party to that proceeding, as required by the Commission’s own rules and procedural due process.
La. Const, art. 10, § 7 provides as follows:
Permanent appointments and promotions in the classified state and city service shall be made only after certification by the appropriate department of civil service under a general system based upon merit, efficiency, fitness, and length of service, as ascertained by examination which, so far as practical, shall be competitive. The number to be certified shall not be less than three; however, if more than one vacancy is to be filled, the name of one additional eligible for each vacancy may be certified. Each commission shall adopt rules for the method of certifying persons eligible for appointment, promotion, reemployment, and reinstatement and shall provide for appointments defined as emergency and temporary appointments if certification is not required. [Emphasis added.]
La. Const, art. 10, § 10(A)(1) and (4) provides, in pertinent part, as follows:
(A) Rules. (1) Powers. Each commission is vested with broad and general rule-making and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, ...
[[Image here]]
(4) Effect. Rules adopted pursuant hereto shall have the effect of law and be published and made available to the public. Each commission may impose penalties for violation of its rules by demotion in or suspension or discharge from position, with attendant loss of pay.
[Emphasis added.]
La. Const, art. 10, § 12(A) provides, in pertinent part, as follows:
The State Civil Service Commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases, with subpoena power and power to administer oaths.
[Emphasis added.]
In Sanders v. Department Of Health & Human Resources, 388 So.2d 768, 771 (La. 1980), the Court stated as follows:
The provisions of the state constitution involving the Civil Service, La.Const. art. 10, § 1, et seq., and the rules of the Commission are designed to secure adequate protection to public career employees from political discrimination. They embrace the merit system, and their intent is to preclude favoritism. The purpose of the civil service rules is to guarantee the security and welfare of public service.
In Finley v. Department of Corrections, Louisiana Training Institute, 351 So.2d 811, 813 (La.App. 1st Cir.1977), this court stated as follows:
We do not think that an appointing authority can make job appointments in violation of both the letter and spirit of the Civil Service Rules and thereby deprive its employees of rights which are given them by the Constitution of this State and by the Civil Service Rules.
The essence of Mott’s complaint is that the DCS violated the Civil Service rules when it excluded his name from promotional certificate # 1352, this violation rendered Davenport’s appointment improper and justifies her removal from the position, a new proceeding should be started to fill this vacancy, and his (Mott’s) name should be included on the new promotional certificate to fill the vacancy. We cannot agree with the Commission that it is powerless to act if the facts to support this claim have been properly proven. The practical *719 effect of such a holding is that the DCS could willfully or negligently fail to comply with Civil Service rules with impunity. Such a rule means that potentially grave injustices will have no remedy. Such a rule does not protect the security and welfare of public service or protect public career employees. Accordingly, we construe La. Const, art. 10, §§ 7, 10 and 12 in pari materia to mean that the Commission has the power to remove[2] a public employee from a position to which he has been promoted when it is proven that the promotion was accomplished by DCS (or any other legal person) in violation of Civil Service rules.
This is clearly contemplated by Civil Service Rule 13.10(c) which provides as follows:
An appeal may be made to this Commission by
[[Image here]]
(c) Any person in the Classified Service who alleges that he has been deprived of any right, ... or adversely affected by the violation of any provision of the Article or of any Rule of this Commission.
Mott contends he was improperly deprived of his right to be considered for the promotion and was adversely affected by DCS’s violation of Civil Service rules when it excluded his name from the promotional certificate. The ruling by the Commission is wrong.
These assignments of error have merit.
DECREE
For the foregoing reasons, the Commission’s decision is reversed, and this matter is remanded[3] to the Commission for consideration of the merits of the appeal. The DCS is cast for the cost of this appeal of $60.00.
REVERSED AND REMANDED.

. Specifically, the Commission held as follows:
Even if the Commission concluded that appellant’s name should have been on the certificate because he met the selective certification requirements as requested by DHHR or that appellant’s name should have been on the certificate because the request for selective certification should not have been honored, the Commission concludes that it cannot order Ms. Davenport’s promotion vacated. In Donchess v. Department of Health and Human Resources, 457 So.2d 833 (La.App. 1st Cir. 1984), an employee appealed the denial of a promotion on two bases: 1) that the agency had abused its discretion and had violated the Civil Service Article in making the promotion and 2) the person promoted had used political connections to get the promotion and did not meet the minimum qualifications for the position. Based on the evidence presented, the Commission concluded that the person selected did not meet the minimum qualifications and therefore, the Commission ordered the promotion rescinded. On appeal, the Court of Appeal concluded that the recision of the promotion constituted a demotion for the person who had been promoted, and that the demotion could only be taken for cause and upon providing detailed reasons in writing to the affected employee. The Court concluded that the action was procedurally defective because the employee was never made a party to the proceedings and was never afforded an opportunity to defend herself.
In this case, although Ms. Davenport was made a party hereto, there are simply no charges against her. Succinctly stated, even if DCS erred or if DCS had violated a Civil Service Rule, there would still be no cause for Ms. Davenport’s demotion. If the Commission is powerless to order the recision of a promotion under the circumstances presented in the Donchess case, the Commission is certainly powerless to order Ms. Davenport’s promotion rescinded in this case, wherein appellant has charged neither DHHR nor Ms. Davenport with any wrongdoing. For the foregoing reasons, the Commission concludes that appellant is not entitled to have Ms. Davenport’s promotion vacated so that appellant can be considered for that particular promotion. However, until DCS can determine with specificity what certifications and/or registries are acceptable to JCAH, DCS is hereby ordered to discontinue permitting selective certification, based on ASCP certification or eligibility therefor, for Laboratory Technologist positions.

. Because this is a removal case, there is authority, pursuant to La. Const, art. 10, § 12(A), for a direct appeal from the Commission to this court.

. Ordinarily, judicial efficiency would require us to decide the merits of this case on the record before us. However, since this appears to be a case of first impression and because the Commission has unique expertise in Civil Service matters, we believe the interests of justice dictate that the Commission be given the opportunity to make the initial determination on the merits. La.C.C.P. art. 2164.